IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 4, 2009

## JOHN BIASELLI v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Bedford County**
**No. 11540    Robert Crigler, Judge**

---

**No. M2008-02335-CCA-R3-PC - Filed November 18, 2009**

---

The petitioner, John Biaselli, pleaded guilty to one count of possession of a Schedule II controlled substance for resale and one count of possession of a Schedule II controlled substance for delivery, both Class B felonies. The trial court merged the two counts and sentenced the petitioner to eleven years in the Tennessee Department of Correction at thirty percent. The petitioner appealed his sentence to this court, which affirmed the trial court. The petitioner now appeals the judgment of the Bedford County Circuit Court denying post-conviction relief. The petitioner asserts that he entered guilty pleas involuntarily and unknowingly due to the ineffective assistance of counsel and the trial court's failure to ascertain the facts of the case adequately. Following our review of the record and the parties' briefs, we affirm the judgment of the court denying post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J.C. McLin, J., delivered the opinion of the court, in which John Everett Williams and Alan E. Glenn, JJ., joined.

Hershell D. Koger, Pulaski, Tennessee, for the appellant, John Walter Biaselli.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Charles Frank Crawford, Jr., District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### Background

In September 2006, a Bedford County Grand Jury indicted the petitioner on one count of possession of a Schedule II controlled substance for resale and one count of possession of a Schedule II controlled substance for delivery, in violation of Tennessee Code Annotated section 39-17-417. The petitioner pleaded guilty on both counts and agreed to allow the trial court to determine the

length and manner of serving his sentence. At the plea acceptance hearing, the prosecutor stated the following factual basis for the plea:

[O]n July 14th of [2006], agents of the Drug Task Force had a couple of confidential informants working for them. And one of those confidential informants made a controlled buy from a Lot Number 1 of the Couch Lane Trailer Park.

The confidential informants . . . provided a description of the individual who they had made the buy from. The agents conducted a surveillance on this particular trailer. They observed a sport utility vehicle pull into the trailer park, an occupant go into the trailer and then very shortly come out.

They conducted a traffic stop of the driver of that sport utility vehicle. And he admitted to agents that he had just purchased crack cocaine from an individual inside the Lot 1 of the Couch Lane Trailer Park, and provided a description of that individual, which matched the description of the person that the confidential informants had made a buy from earlier in the day.

The agents then went to the door, front door of the trailer. They knocked on the door. Before the front door was opened, another door . . . opened and they observed the [petitioner], who they recognize[d] from another investigation, stick his head outside the door and slam the door immediately. And then they could hear . . . a voice inside, which they believe to be the [petitioner], running through the house indicating that the Drug Task Force was outside.

The agents then basically grabbed the door and went on in. There were a number of people inside, including the [petitioner]. The[] agents began interviewing people and seizing different drugs, various quantities, various types.

They then conducted an interview of the [petitioner]. And he indicated to them that he had acquired some crack cocaine from some drug dealers in Nashville. He indicated he'd actually stolen it from them because they had sold fake crack cocaine to him in the past. And that he estimated that it was a block of crack cocaine the size of a block of cheese.

He indicated that he returned to Shelbyville and divided it evenly between himself and some other individuals, essentially everyone taking approximately four ounces of crack cocaine. And he indicated the he had been distributing crack cocaine to various addicts since then.

Other persons were interviewed. And they, too, indicated that the [petitioner] had been distributing crack cocaine from that location for a period of time. There was some crack cocaine seized that the [petitioner] acknowledged was his.

The petitioner admitted, through his counsel, that he had an interest in the bag of cocaine found in the trailer and that "part of it was being sold." The petitioner admitted that he used the drugs and is an addict. The trial court accepted the guilty plea, and merged the counts. The trial court sentenced the petitioner to serve eleven years in the Tennessee Department of Correction. The petitioner appealed his sentence to this court, arguing that the trial court erred by sentencing him to incarceration rather than alternative sentencing. This court affirmed the trial court's finding that the petitioner was not eligible for alternative sentencing. *State v. John W. Biaselli,* No. M2007-00129-CCA-R3D-CD, 2008 WL 741481, at * 1 (Tenn. Crim. App. March 20, 2008).

The petitioner timely filed a *pro se* petition for post-conviction relief, alleging ineffective assistance of counsel on the grounds that counsel did not have "all the evidence present before preceeding [sic]." The trial court appointed counsel. Post-conviction counsel filed an amended petition, alleging that: (1) trial counsel did not properly advise the petitioner regarding the elements of the offense, causing the petitioner to enter a guilty plea unknowingly and involuntarily, and (2) the trial court violated the petitioner's due process rights by accepting his plea based on insufficient facts. The post-conviction court held a hearing on the petition, and the petitioner went forward with the grounds stated in his amended petition.

At the post-conviction hearing, the petitioner testified that trial counsel discussed possible sentencing options with him, but they did not discuss a plea agreement with the state. He recalled that during the plea acceptance hearing, the judge asked him questions about his understanding of his case and his rights. The petitioner testified that he had disagreed with the prosecutor's statement of facts during the plea colloquy. During the plea hearing, the petitioner told the court that he had previously lied to the Drug Task Force agents about stealing a block of cocaine. He recalled that the trial court allowed him to confer with counsel at that point. He testified that counsel advised him that being aware that they sold drugs out of the trailer and using those drugs were "the same thing" as owning the drugs. The petitioner further testified that he pled guilty to the charges because he believed, based on his counsel's advice, that using the drugs "was sufficient for [the petitioner] to knowingly possess with intent to sell or deliver . . . ." The petitioner stated that he was "not guilty of selling or trying to sell drugs."

On cross-examination, the petitioner testified that he met with counsel "once or twice," and once might have been at the jail. He stated that he could not remember whether counsel explained to him the difference between actual and constructive possession, but he never possessed the cocaine found on top of the refrigerator. The petitioner testified that his interest in the cocaine "was a using interest only." The petitioner stated that he did not know to what the Drug Task Force agents might have testified at trial, had his case gone to trial. The petitioner testified that counsel told the trial court that the petitioner had been a party to selling drugs out of the trailer. He further testified that he had agreed "100 percent" when the judge asked him if he agreed with his lawyer.

Regarding sentencing, the petitioner testified on cross-examination that he believed he would only get "two or three years, because [he] was a user." He could not recall what the judge had told

-3-

him about sentencing, but he stated that counsel had told him "if it went bad [the petitioner] could get a number of years . . . ." The petitioner testified that he signed a petition to plead guilty, which stated the charges and possible sentences, because counsel had advised him that the charges "mean[t] the same thing" as being guilty of using.

On redirect examination, the petitioner testified that his "ultimate goal" was to be placed in drug rehabilitation. He stated that he "assumed state probation and/or community corrections" would be the likely outcome because he knew about the drug sales, and he was using the cocaine. The petitioner testified that he had discussed both community corrections and split confinement with counsel. The petitioner further testified that he understood being a party or principal meant "that [he] knew what was being done with [the drugs], that they were selling [them], and that [his] interest that [sic] [he] was using it . . . ."

Trial counsel testified that he has been licensed to practice law in Tennessee for twenty years, ten years in private practice and ten years at the public defender's office. He stated that he met with the petitioner at the jail "a couple of times" and discussed the facts of the case. Counsel testified that he also discussed a plea offer of ten years from the state and sentencing options if the petitioner allowed the trial court to set his sentence. Counsel stated that he never suggested to the petitioner that he might only receive two to three years. He testified that the petitioner told counsel that he had lied to the Drug Task Force agents but that he had "actually exchanged cocaine for money with other people." Counsel further testified that he discussed the option of going to trial and what the defense would be but that the Drug Task Force agents would testify as to the petitioner's statement to them. Counsel stated that he explained the charges to the petitioner, including how the court could hold the petitioner responsible for the conduct of others. Counsel testified that he explained the concept of criminal responsibility to the petitioner by using aiding and abetting terminology, and he repeated this explanation during the plea colloquy. Counsel stated that the petitioner appeared to understand his explanations.

On cross-examination, counsel testified that he did not remember the petitioner actually saying that he was involved in selling drugs during the plea colloquy. The petitioner testified on rebuttal examination that he denied ever telling counsel that he was involved in selling or distributing drugs.

The post-conviction court admitted a transcript of the plea colloquy into evidence. The record shows that the trial court questioned the petitioner about his level of education and his understanding of the case, to which he replied that counsel had satisfied his questions. The trial court enumerated the petitioner's rights, the charges against him, and the possible sentences he might receive. The trial court found that the petitioner was competent and entered the guilty pleas "knowingly, understandingly and voluntarily."

At the conclusion of the post-conviction hearing, the court took the matter under advisement. Subsequently, the court issued a written order dismissing the petition for post-conviction relief. The petitioner now appeals.

**Analysis**

On appeal, the petitioner argues that his guilty pleas were involuntary and unknowing because he received ineffective assistance of counsel and because the trial court failed to ascertain whether the petitioner understood the charges against him and the consequences of pleading guilty. The petitioner asserts that he received ineffective assistance of counsel because his trial counsel improperly advised him of the elements of the offenses. The petitioner further asserts that the trial court did not question the petitioner sufficiently after the petitioner expressed disagreement with the prosecution's statement of the facts during the plea acceptance hearing. According to the petitioner, the trial court accepted his guilty pleas based on an insufficient factual basis.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). On appeal, this court is bound by the post-conviction court's findings of fact unless the evidence preponderates against those findings. *State v. Burns,* 6 S.W.3d 453, 461 (Tenn. 1999). Our review of the post-conviction court's factual findings is *de novo* with a presumption that the findings are correct. *Fields v. State,* 40 S.W.3d 450, 457-58 (Tenn. 2001). Our review of the post-conviction court's legal conclusions and application of law to facts is *de novo* without a presumption of correctness. *Id.*

When determining the knowing and voluntary nature of a guilty plea, the standard is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31 (1970). *See also State v. Pettus,* 986 S.W.2d 540, 542 (Tenn. 1999). The reviewing court must look to various circumstantial factors, including:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). In order for a guilty plea to be voluntary, the petitioner must have an understanding of the charges against him and the consequences of pleading guilty, including "the sentence that he will be forced to serve as the result of his guilty plea and conviction." *Id.* at 905. A petitioner's solemn declaration in open court that his or her plea is knowing and voluntary creates a formidable barrier in any subsequent collateral proceeding because these declarations "carry a strong presumption of verity." *Blackledge v. Allison,* 431 U.S. 63, 74 (1977).

To establish the ineffective assistance of counsel, the petitioner bears the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the

defense rendering the outcome unreliable or fundamentally unfair. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). *See also Arnold v. State,* 143 S.W.3d 784, 787 (Tenn. 2004). Deficient performance is shown if counsel's conduct fell below an objective standard of reasonableness under prevailing professional standards. *Strickland,* 466 U.S. at 688. *See also Baxter v. Rose,* 523 S.W.2d 930, 936 (Tenn. 1975) (establishing that representation should be within the range of competence demanded of attorneys in criminal cases). A fair assessment of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland,* 466 U.S. at 689. *See also Nichols v. State,* 90 S.W.3d 576, 587 (Tenn. 2002). Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. *Hellard v. State,* 629 S.W.2d 4, 9 (Tenn. 1982). The fact that a particular strategy or tactical decision failed does not by itself establish ineffective assistance of counsel. *Goad v. State,* 938 S.W.2d 363, 369 (Tenn. 1996). Once the petitioner proves that counsel's representation fell below a reasonable standard, the petitioner must also prove prejudice. *Strickland,* 466 U.S. at 694. In relation to a guilty plea, the petitioner must show a reasonable probability that, but for the errors of his counsel, he would not have pled guilty and would have insisted on going to trial. *See Hill v. Lockhart,* 474 U.S. 52, 59 (1985); *Adkins v. State,* 911 S.W.2d 334, 349 (Tenn. Crim. App. 1994).

In denying post-conviction relief, the post-conviction court found that "the [s]tate's summary of the case, the colloquy between the trial court and the [petitioner's] attorney's statement [sic] to which the [petitioner] responded, '[t]hat is 100 percent correct,' constitute a sufficient factual basis to accept the [petitioner's] guilty plea[s]." The post-conviction court also found that the petitioner's guilty plea was voluntary and knowing, based on the plea hearing transcript and the post-conviction hearing testimony. Furthermore, the post-conviction court found that counsel's advice and services "were within the range of competence demanded by attorneys in criminal cases."

The petitioner did not prove by clear and convincing evidence that he entered guilty pleas unknowingly and involuntarily due to counsel's ineffectiveness or any failure of the trial court. The record reflects that both counsel and the trial court explained to the petitioner the charges against him. Specifically, counsel described to the petitioner the elements of the offenses, that he was criminally responsible for the actions of others, and that he constructively possessed the drugs found in the trailer. Counsel discussed with the petitioner the options of accepting an offer from the state, letting the trial judge determine the sentence, or going to trial. The record reflects that the petitioner chose to plead guilty and allow the trial judge to set his sentence, hoping to receive a sentence involving rehabilitation. Furthermore, the plea hearing transcript shows that the petitioner had carefully read the Petition to Enter a Plea of Guilty, which he signed. The trial court informed the petitioner of his rights. The petitioner indicated that he understood and waived his rights. The petitioner initially disagreed with the prosecution's statement of the facts underlying the charges, after consultation with counsel the petitioner agreed to his counsel's version of the facts; however, when asked by the trial court if "those guilty pleas [were his] free and voluntary decision," the petitioner responded, "yes, sir, Your Honor." The petitioner stated that he had no further questions and that he had thoroughly discussed his case with counsel. In the petitioner's presence, the trial court found that the petitioner was "knowingly, understandingly and voluntarily" entering a guilty

plea and "that [there was] a sufficient factual basis to accept the pleas." Accordingly, we affirm the judgment of the post-conviction court that a sufficient factual basis existed to accept the petitioner's guilty pleas.

Additionally, the post-conviction court found that counsel met the standard demanded of criminal attorneys, and the record does not preponderate against the post-conviction court's finding. The post-conviction court accredited counsel's testimony that he explained the charges against the petitioner, including how the court could hold the petitioner criminally responsible for the acts of another and what sentence the petitioner could expect. We conclude that the petitioner failed to show that counsel's assistance was defective, and it is therefore unnecessary to reach the second prong of the *Strickland* test.

### Conclusion

Based on the appellate record and the foregoing reasoning, we affirm the judgment of the post-conviction court.

_____

J.C. MCLIN, JUDGE